GEORGE W. R. MATTESON *et al. vs.* ELIZABETH C. GODDARD *et als.*

By a will executed and dated September 2, 1881, a testator provided in his residuary clause, "All the rest and residue of my property, real, personal, and mixed, wherever situated and of whatever kind, of which I may be possessed at the time of my death, or *over which I at the time of my death may have the power of testamentary disposition,* I give, devise," etc.

By instruments executed March 9, 1888, he conveyed the personalty and nearly all the

realty devised by the above will to trustees upon certain trusts, among them, for himself for life, and after his death for such uses and purposes " as I by my last will and testament shall direct and appoint concerning the same," and in default thereof to his widow for life, with remainders over.

*Held,* that the residuary clause of the will did not execute the subsequently created powers of appointment.

BILL IN EQUITY for instructions.

*March* 14, 1891. DURFEE, C. J.    Francis W. Goddard died May 16, A. D. 1889, leaving a wife, Elizabeth C. Goddard, a son, a daughter, and a grand-daughter, daughter of said daughter, surviving heirs. He left a will, which has been proved, dated September 2, A. D. 1881. It consists of three clauses. The first clause directs the payment of his debts; the second devises land in Warwick to his wife for life with remainders over; the third is as follows: " All the rest and residue of my property, real, personal, and mixed, wherever situated and of whatever kind, of which I may be possessed at the time of my death, *or over which I at the time of my death may have the power of testamentary disposition,* I give, devise, and bequeath to my wife, Elizabeth Cass Goddard, to her and her heirs." Six and a half years later, to wit, March 9, A. D. 1888, Mr. Goddard executed two trust deeds, by one of which he conveyed certain real estate, including said Warwick land and all but a very small part of that which was devised by the third, or residuary clause of his will, and by the other fifty shares in the Berkley Company, a manufacturing corporation. The property was conveyed to the complainants upon certain trusts declared in said deeds, among them for Mr. Goddard, the settlor, for life, and after his decease, "for such uses and purposes," to use the language of the deed, " as I by my last will and testament shall direct and appoint concerning the same," and, in default thereof, to his wife for life, if she should survive him, and then, by a series of contingent limitations, carefully drawn, to his children and their issue, if they or any of them should survive him and his wife, if not, to the person or persons who, at the death of him and his wife, should then be entitled to the same, as real estate, as his heir or heirs at law of the blood of his mother, according to the statute of descent then in force. The complainants bring this bill for instruction upon the question whether the will, or rather the residuary clause thereof, does or can operate on the trust estates as an appointment of the same

under said deeds, Mrs. Goddard claiming that it does, and the other defendants that it does not.

The question depends on the construction given to said residuary clause and deeds. As regards the residuary clause, if we strike out of it the words which we have italicized, it will be simply a gift of the residue of the testator's property, including after-acquired, remaining his at his death, and, in our opinion, it could not be held to have been intended to operate as an execution of the power, the power when the will was made having no existence. The question, then, as regards the residuary clause is, whether, taken as a whole, it was intended, in view of the words which we have italicized, to operate as an execution of the power, and if so, whether it can so operate, seeing that the power did not exist until after the will was made.

If the clause be examined, it will be seen that it includes, according to its terms, only the testator's own property, and does not extend to property over which he has only a power, property and power being distinct things. The language is, " all the rest and residue of *my* property," etc., and grammatically the relative pronouns used later in the clause relate back to " the rest and residue of *my* property." It is only by supplying by construction the words " any property " after " or " in the italicized phrase, that the clause can be held to express an intention to execute the power. There are cases that give countenance to such a construction, but they are cases in which the power existed before the will was made. *Bailey* v. *Lloyd*, 5 Russ. 330 ; *Cowx* v. *Foster*, 1 Johns. & H. 30 ; *Ferrier* v. *Jay*, L. R. 10 Eq. 550 ; *Teape's Trusts*, *In re*, L. R. 16 Eq. 442. The grounds of decision in these cases are, *first*, that it was natural or in the common course of human conduct for the testator to execute the power, the power being previously existent, and, *second*, that the language, having reference to power, was strange and purposeless, if the testator intended to dispose only of his own property, whereas it was what might be expected, if he likewise intended to dispose of the property over which he had simply an appointing power. For these two reasons, each strengthening the other, and in at least one of the cases for other reasons also, it was held, under the circumstances of the cases, that the power had been executed. In the case before us

the first of the two main reasons is wanting, and the second does not apply as it did in the cases referred to.

In order to account for the use of the language in said residuary clause, it is not necessary to suppose that the purpose was to execute a power not then existent. Under our statute after-acquired real estate does not pass by will unless it is devised " in express terms." When Mr. Goddard made his will, he evidently wished to give his wife the entire residue of his estate as it should exist at his death, and for that purpose beyond question, added the words " of which I may be possessed *at the time of my death*," after the words, " all the rest and residue of my property, real, personal, and mixed, wherever situated and of whatever kind."

The words " or over which I *at the time of my death* may have the power of testamentary disposition " follow the words " of which I may be possessed at the time of my death," referring back to the same antecedent, and may be naturally read as a supplemental or completer expression of the same purpose. In each phrase the time to which it relates is a prominent feature. It may be that the later phrase is unnecessary for such a purpose; and yet a man may *own* more than he *possesses*, if " possess " is used in its primary signification, and hence the words " or be then entitled to " are often added for greater surety; instead of which, in the residuary clause here, the phrase in question may be well regarded as having been used. The clause, read in that way, is congruous in all its parts, and there is no need to supply a new antecedent for the second relative pronoun, a proceeding which cannot be justified here by saying, as is sometimes said, that the donee of the power, being tenant for life of the estate which is subject to it, naturally comes to think of the whole estate as his own; for here it was not until after the will was made that the power was created. We doubt if it would occur to any one to read the clause in any other way, if the trust deeds had not been subsequently executed; and yet in construing it we should not regard the deeds, but construe it in the light of such circumstances only as existed when the will was made. *Hope* v. *Hope*, 5 Giff. 13; *Wilbore* v. *Gregory*, L. R. 12 Eq. 482; *Boyes* v. *Cook*, L. R. 14 Ch. Div. 53; *Mills* v. *Mills*, L. R. 34 Ch. Div. 186. Of course, if the will was intended to operate only on the testator's own estate, we cannot regard the power as executed by it.

Secondary, it seems almost like a contradiction in terms to say that a power can be executed even incipiently by will, before it exists, and the cases of *Estate of Eliza H. Vaux*, 11 Philadelphia, 57, and *Walker* v. *Armstrong*, 21 Beav. 284, are to the contrary. There is one way, however, in which it may be that a power can be executed by or according to a preëxisting will; namely, where the power is created or reserved with the intent that it shall be so executed, in case the will is left to take effect. But whether such be the intent is a question under the instrument creating the power, not under the will.

The appointee under a power is, in contemplation of law, an appointee under the instrument creating the power, and therefore if any person claim as appointee under a power, it is for him to show that the power has been executed, or has taken effect in his favor agreeably to the instrument creating it. The question here in this aspect is, whether Mr. Goddard intended to have the power, reserved to himself in the trust deeds, executed by his then existing will, if not revoked. The language by which the power is reserved is "to such uses and purposes as I by my last will and testament *shall* direct and appoint." It looks to the future. It is said that, as the will does not take effect until the death of the testator, the language is appropriate to an appointment under it, whether popularly or technically considered. The old case of *Spring dem. Titcher* v. *Biles*, 1 Term Rep. 435, note, is the only case which we have seen decided prior to the enactment of 1 Vict. cap. 26, commonly called the Wills Act, that gives support to this position. In that case a copyholder, after having made a will by which he devised his copyhold and other estates, surrendered his copyhold to the use of such person or persons as he should by will appoint, and the court decided that the surrender was to the use of the devisee under his will. There was there, however, no settlement of the copyhold in default of appointment by will, and it would seem that the copyhold was not devisable without a surrender. But in *Doe dem. Dilnot* v. *Dilnot*, 5 Bos. & Pul. 401, one John Dilnot, after devising an estate, levied a fine thereof to such uses "as he, John Dilnot, *shall*," etc., "appoint, and, in default of appointment, to the use of himself and heirs," and the court, remarking the difference between freehold and copyhold estates in such respect, declined to follow

*Spring dem. Titcher* v. *Biles*, and held the prior will to be revoked by the fine, and ineffectual to execute the power. The old cases of *Nott* v. *Shirley*, *Kenyon* v. *Sutton*, and *Tickner* v. *Tickner*, reported in a note in 2 Ves. Jun. 604, are of similar import. See, also, Chance on Powers, §§ 334, 335, 328. In *Leigh* v. *Norbury*, 13 Ves. Jun. 339, decided A. D. 1807, personal property was, in view of a second marriage, settled to the use of the settlor for life, and after his death to the use of such persons as the settlor by deed or will should (*shall*) appoint, and in default thereof to the settlor's next of kin, and, no subsequent deed or will having been executed, the court held that the settlement was not affected by a will executed by the settlor prior to the settlement, though it purported to dispose of all his estate. See, also, *Walker* v. *Armstrong*, 21 Beav. 284, *Cowper* v. *Mantell*, 22 Beav. 223, and *Hope* v. *Hope*, 5 Giff. 13. The weight of English authority, unaffected by the Wills Act, is against a prior will operating as an execution of a power subsequently created or reserved in such or similar terms. In *Howard* v. *Carusi*, MacArth. & Mackey, Dist. Columbia, 260, one Lewis Carusi, after making a will disposing of his entire property, executed a deed of trust of a certain estate for his own use for life, and after his decease for such person or persons as he might (*may*), by his last will and testament, etc., designate. He made no subsequent will, and the court held that the prior will could not operate as a designation, a subsequent designation being intended, and consequently that the settled estates were left in the trustees for the settlor's heirs at law. No American case has been cited in which a prior will has been held to operate as an execution of a power subsequently created or reserved. In *Willard* v. *Ware*, 10 Allen, 263, the will which preceded the power was reaffirmed by a codicil which followed the power and was so brought down in legal effect to the later date. The power could the more readily be regarded as executed by a prior will, if the language of the instrument creating the power were "to such uses as shall be declared by my will" instead of "to such uses as I shall appoint," or "to such uses as the settlor shall appoint," by will, since the latter form of words the more certainly imports an act to be personally performed, rather than an effect which is to come to pass by mere effluxion of time from something which has been already performed.

The counsel for Mrs. Goddard cites English cases, decided since the Wills Act, in which powers, like that here in question, have been held to be executed by prior wills, devising the estates over which the powers were reserved. *Stillman* v. *Weeden*, 16 Sim. 26 ; *Patch* v. *Shore*, 2 Drew & Sm. 589 ; *Boyes* v. *Cook*, L. R. 14 Ch. Div. 53 ; *Hodson* v. *Dancer*, 16 W. R. 1101. The decisions were made with special reference to the Wills Act, which provides that, unless the contrary appears, every will shall be construed with reference to the real and personal estate comprised in it, to speak and *take effect* as if executed immediately before the testator's death, and that a general devise or bequest shall be held to include any property which the testator has power to appoint as he thinks proper. §§ 24, 25. This makes the will, whenever made, the same in legal effect as if it were the testator's last act. The English courts hold themselves bound to construe it so, and consequently hold that a power to appoint by will, will be executed as effectually by a prior as by a subsequent will, the donor of the power or the settlor being presumed to know the law, and to intend that the prior will shall so operate, unless a contrary intention appears. " The enactment," it has been said, " supplies an intention and construes the will as an appointment, unless the will itself declares a contrary intention." *Moss* v. *Harter*, 2 Sm. & G. 458, 464 ; *Thomas* v. *Jones*, 2 Johns. & H. 475. We have no statute that imputes an intention, but we must follow that which we find.

There is another aspect in which the case should be considered. The trust property is settled, in default of appointment, to uses that are in marked opposition to the will. The will gives the entire residue to Mrs. Goddard, absolutely, to do with as she pleases. Under the will she could sell it, she could devise or bequeath it at pleasure, and, if she should survive her children and their issue and die intestate, it would go by descent entirely away from the Goddard name or blood. The deeds manifest a very special solicitude to prevent this, and to keep the property in the Goddard line. They limit it to Mrs. Goddard for life only, and they limit the remainder on contingencies that make it inalienable during her life. Now is it to be supposed that Mr. Goddard had these elaborate dispositions framed and inserted in the deeds

for no serious purpose, his real intention being, all the while, to have the property go as given by the prior will? It does not seem so to us. We think the deeds are to be regarded as the latest authentic expression of his mind on the matters to which they relate. If it be asked why he did not revoke the will if he did not intend to have it operate as an execution of the powers, the obvious answer is, that he regarded the will as revoked by the deeds to the extent of the property included in them, and that, beyond that, he wanted it to operate on whatever property he might have at his death. See *Moss* v. *Harter*, 2 Sm. & G. 458, and the comment of Lord St. Leonards on it in 1 Sugden on Powers, 8th ed. 305, 306, cited in *Ruding's Settlement, In re*, L. R. 14 Eq. 266, 274.

It is contended that the will may pass the personal, if not the real, property included in the deeds. If the trust of the personal be as completely constituted as that of the real, which is not questioned, we see no good ground for any such distinction. Mr. Goddard evidently intended to have both kinds of property go in the same way.

Our conclusion is, that the powers of appointment reserved in the deeds were not executed by the will.

*Theodore F. Tillinghast*, for complainants.

*Arnold Green*, for respondent, Elizabeth C. Goddard.

*James Tillinghast, Thomas C. Greene & John D. Thurston*, for the other respondents.