·Dollar Savings and Trust Co., Trustee, *v.* Kirkham, et al.

[Cite as Dollar Savings & Trust Co., Trustee, v. Kirkham, 21 Ohio Misc. 163.]

(No. 72001-C—Decided November 19, 1969.)

Probate Division, Common Pleas Court of Mahoning County.

*Messrs. Manchester, Bennett, Powers & Ullman,* for plaintiff.

*Messrs. Harrington, Huxley & Smith,* for defendants Elizabeth Kirkham and William Kirkham.

*Messrs. Friedman & Rummell* and *Messrs. Pfau, Comstock & Springer,* for defendant Claire Kirkham.

*Messrs. Traxler, Malkoff & Schwartz,* for defendant Victor Kirkham.

*Messrs. Newman, Olson & Kerr,* for defendants Clark A. Chathams, Irene H. Chathams, and The Ohio State School for Deaf Alumni Association.

HENDERSON, J. This was heard upon a petition for the construction of a will, the determination of heirship and a declaratory judgment. This opinion is limited to the question of whether Charles W. Kirkham exercised by his will a power of appointment given him by the will of his father, Joseph Kirkham. Joseph Kirkham died testate January 31, 1954, leaving his estate in trust for his son Charles W. Kirkham for life, with a general testamentary power of appointment to the son and a gift over to his son's heirs in the event of his failure to exercise the power.

Charles W. Kirkham, the son, died testate March 2, 1966. At that time he owned about $124,000 of his own and the assets in his father's trust consisted of a one-half interest in a residence property in Struthers, worth about $3,000, and about $64,500 in intangible investments. The testator owned the other one-half interest in the residence, but in his will he referred to it as "my property" as follows:

"*Item III*: I devise my real property located at 130 Elm Street, Struthers, Ohio, consisting of house and lot used as my residnece, to my friend Clark Chathams, if he shall survive me. In the event he shall not survive me, I give and devise said real property to his wife, Irene Elizabeth Chathams.

"*Item IV*: I direct that the garage located on my Elm Street property be torn down and that the lot on which said garage is located be sold to the owners of adjacent property, if they shall so elect. I give and bequeath any

proceeds derived therefrom to Clark Chathams and Irene Elizabeth Chathams, share and share alike, or to the survivor thereof. In the event the owners of adjacent property are not interested in acquiring this lot, the said lot shall remain a part of my residence property and shall be transfererd to Clark Chathams, if he be living, and if he be deceased, to his wife, Irene Elizabeth Chathams.''

The testator made no reference to the power of appointment in his will, but included the following residuary clause:

''*Item V*: All the rest, residue and remainder of my property, real, personal and mixed, whether now owned or hereafter acquired and wherever situated, I give, bequeath and devise as follows:

''Two-thirds (2/3) thereof to Ohio Home for Aged and Infirm Deaf located at Westerville, Ohio, or the successor thereto.

''One-third (1/3) thereof to my friends, Clark Chathams and Irene Elizabeth Chathams, or to the survivor thereof.''

None of the heirs of Charles W. Kirkham is mentioned in his will. While the court excluded some evidence consisting primarily of declarations of the testator there was some competent evidence demonstrating his hostility toward his heirs. There was much evidence that the testator was a deaf-mute, and a ''non-verbal'' deaf person, and that his concept of ''property'' was much broader than that of a normal person, and included property over which he had a power of appointment. It was pointed out by expert witnesses that a ''non-verbal'' deaf person uses limited and unusual grammar and sentence structures in writing, and that by reason of limited vocabulary and a limited ability to communicate, his understanding of ''property'' was more comprehensive and general than that of a normal person better equipped to discern and differentiate. The testator, however, was able to read and write, and was at least of average intelligence.

Counsel upholding the exercise of the power maintain: First, the power was exercised as to the residence property by the specific devises contained in Items III and

IV of his will; Second, that because of the testator's physical handicap and the resultant limitations in his education and means and level of communication when he used the word "property" in the residuary clause he intended to include the right to exercise a power of appointment and to exercise it; Third, the power of appointment was a "right" and therefore was exercised by virtue of Sections 2107.50 and 2107.51, Revised Code; Fourth, the testator demonstrated an intention to exercise the power by omitting to provide anything in his will for his heirs, who are the beneficiaries of the trust property under his father's will in the event of the non-exercise of the power, and by the substantail provisions for the charitable defendant, the Ohio Home for the Aged and Infirm Deaf.

Counsel opposing the exercise of the power concede that the power was partially exercised by the specific devise of the real estate, one-half interest therein being part of the trust assets, but that the power was otherwise not exercised under the doctrine established by the following Ohio authorities: *Bishop* v. *Remple* (1860), 11 Ohio St. 277; *Arthur* v. *Odd Fellows' Beneficial Association* (1876), 29 Ohio St. 557; and, especially, *Kiplinger* v. *Armstrong* (C. A., Summit, 1930), 34 Ohio App. 348, 8 Ohio Law Abs. 286. The following quotation from the latter case well summarizes the Ohio law:

"From our examination of the books, we believe it may be accurately stated that an intention to execute a testamentary power is shown when specific reference is made in the will to such power; when the will disposes of the subject-matter of the power; or when the provisions of the will will not have any operation except as an execution of the power.

"The modern tendency seems to be to relax the rule requiring the intention to execute the power to be clearly established, and to hold that if, from the tenor and effect of the will, construed in the light of the circumstances surrounding the testator at the time of the execution of the power, it can be fairly determined from all the competent evidence available that it was the intentian of the testator to execute the power, such intention will be given effect.

But where the testator has other property, so that the provisions in the will would be effectual without the exercise of the power, and there is no reference in the will either to the power or to the subject-matter of the power, it is generally held that it has not been shown that there was an intention to execute the power." (p. 352)

The Ohio law, as to the exercise of a general power of appointment by a general residuary clause is in accord with the majority of cases establishing the common-law rule. 41 American Jurisprudence, Powers, Section 50, page 841; 15 A. L. R. 3d 354; 5 Bowe-Parker: Page on Wills, Section 45.21, page 555. Some states have enacted statutes changing the common-law rule to provide that general residuary clauses do exercise a general power of appointment unless a contrary intention appears. Ohio has not done so specifically, but counsel upholding the exercise of the power in this case maintain that the following sections of the Revised Code have this effect:

Section 2107.50. Property Acquired Subsequent to Will.

Any estate, right, or interest in any property of which a decedent was possessed at his decease shall pass under his will unless such will manifests a different intention.

Section 2107.51. When Whole Estate To Pass.

Every devise of lands, tenements, or hereditaments in a will shall convey all the estate of the devisor therein, unless it clearly appears by the will that the devisor intended to convey a less estate.

As opposing counsel point out, however, the caption to Section 2107.50, Revised Code, and its history indicate that its purpose is to provide for the passage of property acquired after the execution of a will. Section 2107.51, Revised Code, provides for the conveyance of all a testator's estate where a devise of land is made. Neither section makes reference to a power of appointment. For these reasons, and in accordance with the rule requiring the strict construction of statutes in derogation of the common law, it is believed that the two sections cited do not change the Ohio case law with respect to the exercise of a general power of appointment by a general residuary clause.

The considerable evidence introduced showing that a

"non-verbal" deaf person, such as the testator, has a limited vocabulary, a limited means of communication, and a broader and more inclusive concept of the word "property" than a normal person has, leaves too much to conjecture to constitute evidence of the testator's intention to exercise the power. The language of the residuary clause is clear and precise and has an unambiguous purpose and meaning. In the opinion of the court the evidence of the characteristics of a "non-verbal" deaf-mute person could be considered better evidence of an understandable reason why this testator did not exercise the power than it was of an intent to exercise it. Taken in its entirety, the evidence fails to show that the testator in this case meant anything by his normally worded residuary clause significantly different from that which any other normal person would have meant. The intent of the testator is of course the governing consideration, but this intent must be derived from the language the testator has used where it is not of doubtful import and is applicable to a definite subject or purpose. *Charch* v. *Charch* (1898), 57 Ohio St. 561. Likewise, under the "single plain meaning rule" if the testator "uses words which have a common, general, and unambiguous meaning, evidence of the special meaning which he actually attaches to such words is inadmissible, as are his declarations to the effect that he uses such words with such meaning. This is particularly true when the words have a fixed legal significance * * *." 4 Bowe-Parker: Page on Wills, Section 32.10, page 278.

The only evidence of an intent to exercise the power that can be gleaned from the testator's will as a whole is the specific devise of the residence property, title to one-half of which was in the trust and subject to the power. This is conceded by all parties to constitute an exercise of the power insofar as the house and lot are concerned. Although the rule of constructoin enunciated in *Kiplinger* v. *Armstrong, supra,* could possibly permit the conclusion that the specific devise of the residence property, partially in the trust, was sufficient evidence of an intent to exercise the power as to all the trust property, no cases from the

majority common-law jurisdictions have been cited or found by the court to go quite this far. The decision found nearest to this conclusion is that of *Funk* v. *Eggleston* (1879), 92 Ill. 515; Annotation, 15 A. L. R. 3d 370. Here the court found that specific bequests of personal property not owned in any part by the testatrix but subject to the power were some evidence of an intent to exercise the power by a general residuary clause with respect to real estate one-third of which was owned by the testatrix, and in two-thirds of which she had a life estate and the power. Although it is tempting to extend the logic of this case to the case at bar, particularly in view of the testator's apparent hostility toward his heirs and his obvious concern for the charitable institution he named as a residuary beneficiary, this court is relunctant to do so without clear precedent. Actually, even Charles Kirkham's specific reference to his residence property, under the *Kiplinger* v. *Armstrong* rule of construction, is not entirely indisputable evidence even of his intention to exercise the power as to the residence property, since he himself owned an undivided one-half interest in it upon which his will was, of course, wholly operative. Although this consideration does not alter the effect of the concession by all parties that the power was exercised as to the residence property, it does seem to weaken the significance of the reference to that property as evidence of an intent to exercise the power with respect to all the rest of the trust property. This would seem to be especially true in view of the relatively small value of the residence ($3,000) as compared with the other trust assets ($64,500).

Accordingly, it is concluded that the power of appointment was not exercised by Charles W. Kirkham as to any of the trust assets other than the residence property.

*Judgment accordingly.*