CLEVELAND TRUST CO., as Trustee, etc., Appellee, v. McQUADE et, Appellees, HOSTETLER, Gdn., Appellant, OSLER, a Minor et, New Party. Defendant.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 23762.   Decided April 26, 1957.

326

Squire, Sanders & Dempsey, for appellee, The Cleveland Trust Co., as Trustee, etc.

Von Herzen & Laidig, for appellee, Virginia McQuade.

Van Aken, Whiting, Arnold & Nash, for appellees, Charles George Newcomb and Madge Pentony Newcomb.

Arter, Hadden, Wykoff & Van Duzer, for appellees, Shirley Newcomb Kelsey, Doris A. Newcomb Frick and Richard C. Weiss, as Guardian ad litem of Charles Newcomb Kelsey and Robert S. Frick, Jr.

Marshman, Hollington & Steadman, for appellee, Richard R. Hollington, as Guardian ad litem of Cherie Kelsey, Louise Adele Frick and Susan Katherine Frick, minors, etc.

Baker, Hostetler & Patterson, for appellant, and for Jos. C. Hostetler, as Guardian ad litem of New Party Defendant Richard Mills Osler, a minor, etc., and for all others similarly situated.

(HUNSICKER, PJ, STEVENS and DOYLE, JJ, of the Ninth District, sitting by designation in the Eighth District.)

## OPINION

By DOYLE, J:

The questions presented for decision in this case, on appeal from the Probate Court of Cuyahoga County, were succinctly stated by Judge Kinder, the Trial Judge in that court, as follows:

"This is an action for a declaratory judgment brought by The Cleveland Trust Company in its several capacities as (a) trustee under a trust agreement, dated February 27, 1922, with Anne Baldwin Schultze, and (b) as executor and trustee under the will of Gouverneur Morris, who died on August 14, 1953, his will having been executed on April 2, 1952. The action involves the interpretation and legal effect to be given the Schultze trust agreement, hereinafter called the Trust, and the will of Gouverneur Morris of April 2, 1952, hereinafter called the will, and turns on the question of the effect, if any, of the rule against perpetuities in respect of these documents and the interests sought thereby to be created."

1. The Schultze trust agreement, to which reference is above made, directed that upon the death of the settlor the corpus of the trust should be treated as composed of two equal shares—one to be held for the benefit of the settlor's nephew, Gouvernour Morris, and the other for the benefit of her niece, Henrietta Morris Bonsal, with the net income from each share to be paid to the named beneficiaries for life.

On July 11, 1922, several months after its creation, the trust became irrevocable, as a result of the death of the settlor, and the beneficiaries commenced to receive the income.

There was incorporated in the instrument a general power of appointment, exercisable only by will, for Gouvernour Morris over that

share of the corpus in the hands of the trustee set apart for him. In the event of his failure to exercise the power, the settlor then directed that the Gouverneur Morris share should be added to the share set aside for the niece, Henrietta Morris Bonsal.

The exact terms are:

"Upon the death of my said nephew, Gouverneur Morris, the share of the trust estate, or the balance thereof remaining, held for his benefit, shall vest in and be distributed to his nominees and appointees by his last will and testament. In the event of his death without exercising such power of testamentary appointment, his said share, or the balance thereof then remaining, shall be added to and become a part of the share of the trust estate held for the benefit of my niece, Henrietta Morris Bonsal, to be held and disposed of as is herein provided for her said share."

On August 14, 1953, Gouverneur Morris died, in the state of New Mexico. By his will, which was admitted to probate in Cuyahoga County, Ohio, he sought to exercise the power given by the trust in awarding interests in the income from the trust property to various individuals, and finally the awarding of the corpus to various persons under and upon diverse and various conditions.

It is claimed, among other things, that the power of appointment was not validly exercised, because the estates appointed might not vest within the limitations of the rule against perpetuities; and that, as a result thereof, the share of the corpus of the trust set over to him for appointment must be now added to the Henrietta Morris Bonsal share.

Attention will be first directed to the legal question of whether the period for the rule against perpetuities started to run in 1922, on the effective date of the Schultze trust, or whether it started in 1953, at the time of the death of Gouverneur Morris, at which time the power was sought to be exercised under the terms of his will.

The rule against perpetuities has been codified in this state as follows:

Sec. 2131.08 R. C. "No interest in real or personal property shall be good unless it must vest, if at all, not later than twenty-one years after a life or lives in being at the creation of the interest. All estates given in tail, by deed or will, in lands or tenements lying within this state, shall be and remain an absolute estate in fee simple to the issue of the first donee in tail. It is the intention by the adoption of this section to make effective in Ohio what is generally known as the common law rule against perpetuities."

While this statute was enacted in 1932, and applies to both real and personal property, nevertheless this state has recognized the common law rule against perpetuities as applicable to personal property, and such was the rule both at the time of the creation of the power as well as at the time at which the will became effective. The estate under consideration is treated as consisting entirely of personal property.

Sec. 8622 GC, which was in effect at the time of the creation of the power, applied only to realty.

The trial court, in a scholarly opinion in which many authorities are

cited and discussed, expressed the thought "that most discriminating treatment from the standpoint of the case law on the subject lies with the conclusion that, in so far as a general testamentary power is concerned, the period provided for by the rule runs from the time of its exercise rather than the date of its creation."

The court cited the treatises of scholars as well as the case of Miller v. Douglass, 192 Wis. 486, 213 N. W. 320, as authorities sustaining its views. There was also cited Minot v. Paine, 230 Mass. 514, 120 N. E. 167, as an authority holding to the contrary.

No reported Ohio decision has been found in which a determination of this question was essential to the judgment reached. We have, therefore, a legal question of first impression.

We must determine the common law of Ohio in respect to the question before us. Not only the statute (§2131.08 R. C.), requires it, but the case law as well. 9 O. Jur. 2d, Common Law, Sec. 1, et seq., and cases therein cited.

For the common law, we must look to that general system of law which prevails and prevailed in England, and in the United States by adoption, and " 'the best evidence' of what that law is, 'is to be found in the decisions of courts of justice, contained in books of reports, and in the treatises and digests of learned men.' " Board of Commissioners of Hamilton County v. Mighels, 7 Oh St 110, at pp. 120-121, quoting Chancellor Kent.

A review of the many cases in sister states, as well as leading articles by men learned in the profession, shows a diversity of thought. We are of the opinion, however, that the weight of authority supports a view contrary to that of the trial court.

In "The Law of Future Interests," Simes and Smith, Sec. 1275, the authors speak as follows and cite many authorities in support of their text:

"There has been some controversy over the question whether, in determining the validity of an appointment under a general power to appoint by will, the period should be calculated from the creation of the power or from the time of its exercise. The weight of authority in the United States, and, it is believed, the better reason, is in favor of the view that a general power to appoint by will should be treated as a special Power in this respect, and that the period should be computed from the time of the creation of the power. It has been argued that, since the donee of a general power to appoint by will may appoint to his own estate or to any person for a consideration, he is in substance the owner to almost the same extent as if he had a general power to appoint by deed as well as by will, and that, being substantially the owner, the rule should only apply from the time the power is exercised. It is believed, however, that from a practical standpoint the position of the donee of a general power to appoint by will is very different from that of the donee of a power to appoint by deed. Wills are not, as a rule, commercial transactions. And the fact that a man has an unrestricted power to appoint property by will does not mean that he is likely to put the property on the market and sell it. * * * The property,

during the existence of this power, is, from a practical standpoint, removed from commerce. And it is proper, in determining remoteness, to count the period from the creation and not from the exercise of the power."

Again, in Gray, The Rule Against Perpetuities (Fourth Ed.), at page 498, may be found the statement that—

"3. The remoteness of an appointment depends on its distance from the creation and not from the exercise of the power."

The author then explains, in Sec. 514, that—

"If this were not the case, estates for life with powers of appointment by will might be created; the tenants for life might appoint for life, with powers to the appointees to appoint by will; these appointees might, in their turn, appoint in the like manner, and so an indefinite series of life estates could be created."

See also, Secs. 948, et seq., in Appendix L, ibid.

We have been cited to the following English and Irish cases which bear upon our question: In Re Powell's Trusts, 18 Wkly. Rep. 228, 39 L. J. Ch. 188; Rous v. Jackson, 29 Ch. D. 521; In Re Flower, 55 L. J. Ch. 200; and Stuart v. Babington, 27 Ir. L. R. 551.

From an analysis of these cases, it appears that the weight of authority is with In Re Powell's Trusts, and the principle therein stated has been generally followed in this country when the question has been presented. See: Gray, Rule Against Perpetuities (Fourth Ed.), Sec. 526, et seq.

The rule pronounced in the Powell case may be tersely stated to be that appointments under a general power, exercisable by will only, must be referred to the time of the creation of the power. While other cases in Great Britain and Ireland hold to the contrary, the Powell case has been cited extensively, and its principle followed generally by the majority of American courts in the establishment of the common law of this country.

As heretofore stated, various courts of sister states have discussed the question of law under consideration, and, while local statutes were involved in some of the cases, nevertheless in those cases the rule against perpetuities presented legitimate points for consideration.

In considration of the case law in America, we find the courts to be in almost entire agreement with the rule pronounced by the Simes and Smith and Gray treatises mentioned above. Some of the cases are:

Reed v. McIlvain (1910), 113 Md. 140, 77 A. 329; Gambrill v. Gambrill (1914), 122 Md. 563, 89 A. 1094; Equitable Trust Co. v. Snader (1930), 17 Del. Ch. 203, 151 A. 712; Equitable Trust Co. v. McComb (1933), 19 Del. Ch. 387, 168 A. 203; McCreary's Estate v. Pitts (1946), 354 Pa. 347, 47 A. 2d 235; Lamkin v. Safe Deposit & Trust Co. (1949), 192 Md. 472, 64 A. 2d 704; Marx v. Rice (1949), 3 N. J. Super. 581, 67 A. 2d 918; In re Lovering's Estate (1953), 373 Pa. 360, 96 A. 2d 104; Genet v. Hunt (1884), 113 N. Y. 158, 21 N. E. 91 (based on statute); Dana v. Murray (1890), 122 N. Y. 604, 26 N. E. 21 (based on statute); Fargo v Squiers (1897), 154 N. Y. 250, 48 N. E. 509 (based on Statute); Minot v. Paine (1918), 230 Mass. 514, 120 N. E. 167; Bundy v. U. S. Trust Co. of N. Y. (1926), 257 Mass. 72,

153 N. E. 337; Low v. Bankers Trust Co. (1936), 270 N. Y. 143, 200 N. E. 674; Northern Trust Co. v. Porter (1938), 368 Ill. 256, 13 N. E. 2d 487; Thorne v. Continental Natl. Bank (1940), 305 Ill. App. 222, 27 N. E. 2d 302; Fiduciary Trust Co. v. Mishou (1947), 321 Mass. 615, 75 N. E. 2d 3; In re Van Hoesen's Will (1947), 67 N. Y. S. 2d 503; American Trust Co. v. Williamson (1948), 228 N. C. 458, 46 S. E. 2d 104; St. Louis Union Trust Co. v. Bassett (1935), 337 Mo. 604, 85 S. W. 2d 569; DeCharette v. De-Charette (1936), 264 Ky. 525, 94 S. W. 2d 1018; Ligget v. Fidelity & Columbia Trust Co. (1938), 274 Ky. 387, 118 S. W. 2d 720; Legg's Estate v. Commr. of Internal Revenue (1940), 114 F. 2d 760; Mondell v. Thom (1944), 143 F. 2d 157.

In determining the law of this state, we hold that the period for testing the validity of an exercise of a general testamentary power of appointment, under the common law rule against perpetuities, is measured from the time of the creation of the power and not from its exercise.

2. We now turn to the application of the rule to the estates sought to be created by the will of Gouverneur Morris, measuring the time from the date of the creation of the power.

We find that the grant of the power by the settlor of the trust was valid when created.

Was the exercise of the power by the Morris will valid?

Attention will be first directed to the validity of the disposition of the corpus at the time set by the testator for the termination of the trust.

The will of Gouverneur Morris appointed the share of the Schultze trust held for his benefit by the Cleveland Trust Co., again to The Cleveland Trust Co. as trustee. It, in part, directed:

"The trust hereby created shall terminate when such of the following, to wit: Virginia McQuade, Ralph Newcomb, Charles George Newcomb, Madge Pentoney Newcomb, Doris Frick, Robert Frick, Jr., Shirley Kelsey and Charles Newcomb Kelsey, as were in being February 23, 1952, are all deceased, and upon such termination the principal then comprising the trust estate and any accumulated income shall be paid over and delivered as follows:

"One-half thereof to Cherie Kelsey, if living at the time of the termination; otherwise per stirpes and not per capita to the lineal descendants of the said Charles Newcomb Kelsey, who are living at the time of such termination, if any there be; otherwise per stirpes and not per capita to the lineal descendants I may have, who are living at the time of such termination, if any there be; otherwise per stirpes and not per capita to the lineal descendants of my sister, Henrietta Morris Bonsal, who are living at the time of such termination.

"The remaining one-half to Louise Frick and Susan Frick share and share alike or to either of them who is living at the time of the termination, if either be living; otherwise per stirpes and not per capita to the lineal descendants of the said Robert Frick, Jr., who are living at the time of such termination, if any there be; otherwise per stirpes and not per capita to the lineal descendants I may have, who are living

at the time of such termination, if any there be; otherwise per stirpes and not per capita to the lineal descendants of my sister Henrietta Morris Bonsal, who are living at the time of such termination.

"Provided that if the said Robert Frick, Jr., shall reach the age of twenty-one (21) years, then he shall have the power to nominate and appoint by will the person or persons who shall be vested with and receive one-half of the trust estate at the time of the said trusts termination; and

"Provided also that if the said Charles Newcomb Kelsey, shall reach the age of twenty-one (21) years, then he shall have the power to nominate and appoint by will the person or persons who shall be vested with and receive the remaining one-half of the trust estate at the time of the said trust termination."

At the outset, it is observed from the evidence that, of the eight named persons through whose lives the Morris trust should continue, three of them—Robert Frick, Jr., Shirley Kelsey, and Charles Newcomb Kelsey—were not in being in 1922, on the date of the creation of the Schultze living trust, nor at the time of Mrs. Schultze's death in 1922. It is further observed that the Morris testamentary trust provided for its continuation until all of the eight named persons (including the three not in being in 1922) were deceased, at which time the principal and accumulated income were ordered to be "paid over and delivered" in the manner shown above.

It is here observed that Shirley Kelsey (born in 1929), and Doris Frick (born in 1919), are the daughters of Charles George Newcomb and Madge Pentony Newcomb (each born prior to the effective date of the Schultze trust); Charles Newcomb Kelsey (born in 1949), and Cherie Kelsey (born in 1951), are children of Shirley Kelsey; Robert Frick, Jr., (born in 1943), Louise Frick (born in 1946), and Susan Frick (born in 1950), are the children of Doris Frick.

It thus appears that neither Cherie Kelsey nor any lineal descendants of Charles Newcomb Kelsey were in being in 1922; nor was Louise Frick or Susan Frick, or any lineal descendants of Robert Frick, Jr., in being in 1922.

It is asserted by counsel that, even though the period of the rule against perpetuities "should be measured from the date of the creation of the power of appointment, which in this case would be * * * (in the year) 1922, all of the life estates appointed under the will of Gouverneur Morris, as well as the remainders over of the corpus to Cherie Kelsey, Louise and Susan Frick, would nevertheless be valid. This is so because these estates are vested interests, and vested interests are not subject to the rule against perpetuities. Gray, Rule against Perpetuities (4th Ed.), Sec. 205."

It is agreed that a vested interest is not subject to the rule against perpetuities. Whether these estates were bound to vest within the required time is the problem before us.

Before inspecting in detail the Morris will, to determine whether the estates vested, it will be observed that we are confined to the language of the will, encompassed by the surrounding circumstances bearing on the intent of the testator.

Professor W. Barton Leach well states the rule we must follow in the following terms (Perpetuities in a Nutshell, 51 Harvard Law Review, 638, at p. 642):

"A future interest is invalid unless it is absolutely certain that it must vest within the period of perpetuities. Probability of vesting, however great, is not sufficient. Moreover, the certainty of vesting must have existed at the time when the instrument took effect * * *. It is immaterial that the contingencies actually do occur within the permissible period or actually have occurred when the validity of the instrument is first litigated."

Is the appointment of the corpus void because vesting is deferred for a longer period than lives in being in the year 1922, plus twenty-one years?

Heretofore in this opinion, we have set forth the provision in the will directing the distribution of the corpus of the trust estate upon the death of the last one of eight named persons, three of whom were not in being at the time of the creation of the power in the trust of Mrs. Schultze.

It is obvious that if the estates did not vest at the death of the testator (the time at which the will took effect), then the rule against perpetuities was violated as to these estates, because three of the eight lives which measured the time of vesting were not in being in 1922, when the time limitation on the period for vesting commenced. There is no certainty that these three persons will not live longer than 21 years after lives in being as of 1922, and will not survive the others.

On the contrary, if the estates in the remainder given to the three girls (Cherie Kelsey, Louise Frick and Susan Frick) became vested when the power was exercised, then they vested within lives in being at the time of the creation of the power.

It is again observed that all of these girls were born subsequent to the time of the creation of the power of appointment.

On the question of contingent versus vested interests, it may be stated in general terms that—

"A vested interest is one in which there is a **present fixed** right, either of present enjoyment or of future enjoyment. Where, under the terms of the gift of a remainder, there is an ascertained person in existence who could take the remainder in possession immediately upon the determination of the particular estate whenever and however it might determine, the remainder is vested. * * *

"Where the right is to present enjoyment, the interest is always vested. * * *

"A contingent interest is one in which there is no present fixed right of either present or future enjoyment; but in which a fixed right will arise in the future under certain specified contingencies. Where, under the terms of the gift of remainder, there is no ascertained person in being who could take if the particular estate were at once to determine, or where the remainderman is ascertained by the terms of the gift but he cannot take upon the determination of the particular estate, unless some other or further event occurs before such determination, the remainder is contingent." (Emphasis ours.)

3 Page on Wills (Lifetime Ed.), Sec. 1257, and cases cited.

It is proper to say that a contingent interest is a future interest, and that a future interest is one which involves a postponement of the possession and enjoyment of property. From these legal situations there often arises the question as to whether a beneficiary's interest is completely lost if he fails to survive until the preceding interests are terminated and the time has come for him to possess and enjoy the property. If this question is determined in the affirmative, in construing the language of the gift, it is then generally said that a contingent interest exists, as distinguished from a vested interest.

The determination of the question of whether the will of Morris creates a contingent or vested remainder is vital in this phase of our case because of the wording of the rule against perpetuities (§2131.08 R. C.): "No interest in real or personal property shall be good unless it **must vest**, if at all, not later than twenty-one years after a life or lives in being at the creation of the interest. * * *." (Emphasis ours.)

Does the language in the will ordering that, upon the death of the eight named persons, the trust shall terminate and "the principal then comprising the trust estate and any accumulated income shall be paid over and delivered" to the various named residuary beneficiaries on conditions, create vested or contingent interests?

It is the conclusion of this court that the gifts to Cherie Kelsey, Louise Frick and Susan Frick are contingent interests; they are so limited that the vesting is subject to conditions precedent which render the vesting too remote. The conditional element is incorporated into the description of and into the gift itself. ("One-half thereof to Cherie Kelsey, if living at the time of the termination * * *.") Gray, The Rule Against Perpetuities (Fourth Ed.), Sec. 108; 1 Tiffany on Real Property (Second Ed.), Sec. 137. See also: Sinton v. Boyd, 19 Oh St 30; Richey, Exr., v. Johnson, 30 Oh St 288; and Hamilton v. Rodgers, 38 Oh St 242. See also:: reference to these cases in Ohio National Bank, Trustee, v. Boone, et al., 139 Oh St 361, 40 N. E. 2d 149.

We are of the opinion that these conditions precedent to ownership are sufficient to make these estates contingent and not vested. Also, there will be found, in the will, language creating powers of appointment by will given to Robert Frick, Jr., and Charles Newcomb Kelsey, if they reach the age of twenty-one, restraints on alienation, and other language showing only a direction to pay over and deliver the remainders upon the termination of eight specified lives, under various conditions and circumstances.

If the powers of appointment by will given to Robert Frick, Jr., and Charles Newcomb Kelsey, could, under any circumstance, be justified, nevertheless, there could be no certainty of the vesting of the interests within the rule, because the right to exercise the power might not come into being until after the termination of the eight lives stipulated by the testator (three of which were not in being in 1922), coupled with the requirement that they must live to reach the age of twenty-one years. ("* * * if the said * * * [Robert Frick, Jr., or Charles Newcomb Kelsey] shall reach the age of twenty-one years * * *." This may be called

an attempted contingent executory interest or estate.) Certainly, there is no vesting here within the rule against perpetuities.

For the foregoing reasons, we are of the opinion that vested interests were not created.

On this part of our inquiry, we conclude that the gifts are void because they violate the rule against perpetuities.

It will be here noted that the power of appointment given to Gouverneur Morris was a deputation of the donee Morris to act for Mrs. Schultze, the donor, in disposing of her property. Personal property over which one has the power of appointment is not the property of the donee, but of the donor of the power.

Heretofore in this opinion we have determined (1) the date from which the period of the rule against perpetuities commences to run; and (2) the validity of the estates attempted to be created in the corpus of the trust.

3. We now turn to an inspection of the various intermediate estates.

The testator, after designating, under his testamentary power of appointment, The Cleveland Trust Company, as trustee of the property which was his to appoint under the provisions of the Schultze trust of 1922, first provided:

"If I am survived by both Virginia McQuade and Ralph Newcomb, I direct that from the net income derived from the trust estate the trustee pay the sum of fifty dollars ($50) per month to each of them so long as they shall live. If I am survived by but one of said persons (Virginia McQuade and Ralph Newcomb) I direct that from the net income derived from the trust estate, the trustee pay over and deliver the sum of fifty dollars ($50 per calendar month to such survivor so long as such survivor shall live."

It appears that Virginia McQuade was the secretary of the testator Morris for many years; was born prior to the execution of the Schultze trust; and was alive at the time when the will of Morris became effective. It also appears that Ralph Newcomb is the stepfather of the testator's second wife, Ruth Wightman; was a person in being when the Schultze trust became effective, and was alive when the testator died. It is of no consequence whether they were alive at the commencement of the running of the rule against perpetuities. It is sufficient that they were alive when the testator Morris died. Their interests vested immediately upon the death of the testator, and consequently were valid by using inter alia the life of the testator as the life "in being."

We determine that these gifts are valid, after considering the force of the appellant's claim that they are invalid because "they are subject to the infectious invalidity of the other gifts."

The will next provides:

"If I am survived by Robert Frick, Jr., or Charles Newcomb Kelsey, my Godsons, I direct that from the net income derived from the trust estate the trustee pay the sum of two hundred dollars ($200.00) each Christmas to each of them until such time as they shall receive, as their own, the entire remaining net income from the said trust estate."

Neither Robert Frick, Jr., nor Charles Newcomb Kelsey, had been

born when the power of appointment became effective, but each did survive the testator. The gift of $200 each Christmas was to continue from the date of the death of the testator until such time as they "shall receive, as their own, the entire remaining net income from the said trust estate."

If this gift had been given to them for life, and not dependent upon other provisions in the will (to be set out later), the interests would have vested and become payable at the time of the death of the testator. However, the fact that the duration of the gifts is indeterminate does not alter the rule of vesting, and, as a consequence, these interests vested upon the death of the testator and endure for the indefinite period of time stipulated.

Immediately following the above-mentioned Christmas gift, the will speaks:

"I direct that during the continuance of the trust, the remainder of the net income derived from the trust estate (and all of the net income if neither Virginia McQuade, Ralph Newcomb, Robert Frick, Jr., nor Charles Newcomb Kelsey, be living to receive the payments hereinbefore provided for them) be paid over and deliverd by my trustee in quarterly installments or oftener as follows:

"1. To Charles George Newcomb and Madge Pentoney Newcomb, share and share alike so long as both of them shall live; and to the survivor of them if but one of them be living, so long as such survivor shall live."

Each of these persons was alive many years before the effective date of the Schultze trust, and both survived the testator. We determine that these interests became vested rights upon the death of the testator, and were unaffected by the various other gifts shown to have been made. This gift should not be stricken simply because it is a part of a series of gifts, some of which may be declared invalid.

We determine that this gift is severable as a matter of law, and vested well within the rule against perpetuities.

The will continues:

"2. When Charles George Newcomb and Madge Pentoney Newcomb are both deceased, then as follows:

"To Shirley Kelsey or her legal representative, one-half thereof, until the said Charles Newcomb Kelsey shall reach the age of twenty-one (21) years or is deceased, whichever comes sooner.

"When the said Charles Newcomb Kelsey shall reach the age of twenty-one (21) years, the one-half of said income from the trust estate theretofore paid to Shirley Kelsey, his mother, shall be paid to the said Charles Newcomb Kelsey, so long as he shall live.

"Upon the death of Charles Newcomb Kelsey, the one-half of the trust income directed paid to Shirley Kelsey or to the said Charles Newcomb Kelsey, should he reach the age of twenty-one (21) years, shall be paid to Shirley Kelsey, until Cherie Kelsey reaches the age of twenty-one years, or is deceased; upon Cherie Kelsey's reaching the age of twenty-one then to Cherie Kelsey so long as she may live; upon Cherie Kelsey's death, then per stirpes and not per capita to the lineal descendants of

Charles Newcomb Kelsey living at the time of each distribution of income, if any there be; otherwise per stirpes and not per capita to my lineal descendants."

The will then continued by creating interests in the remaining one-half interest in the income from the corpus here under consideration:

"To Doris Frick or her legal representative, one-half remaining thereof until the said Robert Frick, Jr., shall reach the age of twenty-one (21) years or is deceased, whichever comes sooner.

"When the said Robert Frick, Jr., shall reach the age of twenty-one (21) years, the one-half of the remaining income from the trust estate theretofore paid to Doris Frick, his mother, shall be paid to the said Robert Frick, Jr., so long as he shall live.

"Upon the death of Robert Frick, Jr., the one-half of the remaining trust income directed paid to Doris Frick or to the said Robert Frick, Jr., should he reach the age of twenty-one (21) years shall be paid to Doris Frick until Louise Frick or Susan Frick reaches the age of twenty-one (21) years or is deceased. Upon Louise Frick's or Susan Frick's reaching the age of twenty-one (21) years, then she shall be paid one-half of the remaining one-half of the income from the trust estate. Upon both Louise Frick and Susan Frick reaching the age of twenty-one (21) years, or one is deceased and the survivor is twenty-onee (21) years old, then the remaining one-half, share and share alike to both of them so long as they shall live; and to the survivor of them if but one of them be living, so long as such survivor shall live. When both Louise Frick and Susan Frick are deceased, then per stirpes and not per capita to the lineal descendants of Robert Frick, Jr., living at the time of each distribution of income, if any there be; otherwise per stirpes and not per capita to my lineal descendants."

The many persons named above who were given interests in the estate, upon the death of Charles George Newcomb and Madge Pentony* Newcomb, were not in being when the Schultze trust became effective and the power of appointment given by will to Gouverneur Morris, except only Doris Frick.

In our approach to the question whether these persons have vested interests, we must keep in mind the rule heretofore pronounced, that the period of the rule against perpetuities must be calculated from the date of the creation of the power, and not from the time of its exercise; and that the property appointed is to be regarded as the property of the donor, Mrs. Schultze, and must be treated as passing under the provisions of her trust, manifested by the words employed by Gouverneur Morris, upon whom she had conferred the power to direct the devolution of her property by testamentary act.

---

*The name "Pentony" was spelled "Pentoney" in the will of Gouverneur Morris, and has been so spelled in other places in this case, including the caption of the petition for a declaratory judgment. We are informed that "Pentony" is the proper spelling, and such spelling has been and will be so used by the writer in this opinion in connection with the name of "Madge Pentony Newcomb."

We must further keep in mind that a future interest is invalid unless it is certain that it must vest within the period of perpetuities. A probability of vesting is not sufficient, and the certainty of vesting must have existed when the instrument which marks the commencing of the period became effective. In the case before us, this period started upon the effective date of the Schultze trust.

Did these interests vest within the rule? Are the interests contingent interests? Are they subject to conditions precedent or conditions subsequent? Are some, at least, vested interests of limited duration?

Many Ohio cases, as well as cases in other jurisdictions, have defined contingent interests and contingent remainders. Our problem is not to define them in terms of substantive law, but to find rules of construction which may be satisfactory guides in determining what language creates them.

In 1 American Law of Property, Sec. 4.36, appears the following:

"* * * A contingent remainder is a remainder which is subject to some condition precedent other than the termination of all prior estates, however and whenever that may occur. Thus, A may convey to B for life, and if C survive B and live to attain the age of twenty-one, then to C and his heirs. C has a contingent remainder.

"Contingent remainders have been classified in various ways. Fearne's fourfold classification is classic. Having defined contingent remainders, he says:

" 'Under this definition we may properly distinguish four sorts of contingent remainders: First, where the remainder depends entirely on a contingent determination of the preceding estate itself. Secondly, where the contingency, on which the remainder is to take effect, is independent of the preceding estate. Thirdly, where the condition, upon which the remainder is limited, is certain in event, but the determination of the particular estate may happen before it. Fourthly, where the person, to whom the remainder is limited, is not yet ascertained, or not yet in being.' Fearne, Contingent Remainders (10th Ed.) 5."

It is argued, by those who assert the violation of the rule, that, after the gifts to Charles George Newcomb and Madge Pentony Newcomb (which gifts we have heretofore held valid), Shirley Kelsey is named to take upon their deaths; however, that before she can take, the preceding life interests of Madge Pentony Newcomb and Charles George Newcomb must have terminated before either Charles Newcomb Kelsey and Cherie Kelsey reach the age of twenty-one. They argue that if the estates of the two Newcombs should terminate after either of these two should become of age, or have died, it is obvious that neither she nor her estate would receive any income.

We do not challenge this assertion of the litigants as to the possibility that Shirley Kelsey may never acquire possession; however, a remainder or an estate is not necessarily contingent by reason of the fact that it is uncertain whether it will ever take effect in possession. By this we mean that, what would otherwise be an estate is not a mere possibility of an estate because it may terminate by its own limitation before another estate is provided to arise.

For instance: A limitation to A for life, with remainder to B for life. B has a vested estate—not a mere possibility of an estate, since there is no condition precedent to the enjoyment of possession other than the termination of A's estate. B's remainder is vested, and the fact that, by reason of his death before A's estate comes to an end, B may never acquire the right of possession, is entirely immaterial. Here we regard the termination of the life of the remainderman as a limitation on the continuance of the remainder, and not as a condition precedent.

In our appraisement of the language of the testator, we are of the opinion that the estate given to Shirley Kelsey is an estate upon special limitation, and it vested within the period. It vested when the testator died, and this is so even though she may never go into possession. (For definition of the term "special limitation," see **Warren v. Brenner, et al., 89 Oh Ap 188, at p. 193.)**

The conclusions reached in respect to the interest given "to Shirley Kelsey or her legal representative" is likewise, and for the same reasons, applicable to the interest in the estate given to "Doris Frick or her legal representatives."

We pass now to the life interest given to Charles Newcomb Kelsey. As stated or inferred above, the possibility that an estate may never take effect in possession is immaterial in determining whether it is vested or contingent.

It is profitable, we think, in treating this question to have in mind the following language of Gray, The Rule Against Perpetuities (Fourth Ed.), Sec. 108:

"* * * Whether a remainder is vested or contingent depends upon the language employed. If the conditional element is incorporated into the description of, or into the gift to, the remainderman, then the remainder is contingent; but if, after words giving a vested interest, a clause is added divesting it, the remainder is vested. * * *"

The life interest given to Charles Newcomb Kelsey is given to him when he "shall reach the age of twenty-one." It may well be that this interest could never vest in possession because of his death prior to that time; or because of his death prior to the termination of the preceding life interests of Charles George Newcomb and Madge Pentony Newcomb. However, if it vested in interest at the death of the testator, the fact that he may never get it in possession is unimportant.

It appears, we think, that there are here no words of condition which are made a part of the gift itself to Charles Newcomb Kelsey. As stated before, an estate is not a mere possibility of an estate simply because it may terminate before another conflicting estate. Also:

"* * * Reaching a specified age is not regarded as an uncertain event which will prevent the vesting of the estate. For example, an estate may be limited to one, 'if,' or 'when,' or 'as soon as' he attains a certain age, with a limitation over, in case he dies under the age specified * * *. Here the words of apparent contingency are held not to create a condition precedent to the right of enjoyment, or to denote the time when the interest shall vest, but merely the time when enjoyment in possession shall commence, or when an estate already vested shall be divested. * * *"

33 Am. Jur., Life Estates, Remainders, and Reversions, Sec. 119, and cases cited.

And see: 20 O. Jur. 2d, Estates, Sec. 150, and cases cited.

"4. A devise to one when he arrives at a given age—the intermediate estate being devised to another—vests on the death of the testator, and is not defeated by the death of the devisee before the specified age. The words of futurity importing contingency, are not necessarily inconsistent with the immediate vesting of the estate, but may be regarded as merely postponing the possession."

Linton v. Laycock, et al, 33 Oh St 128.

We determine that the gift to Charles Newcomb Kelsey vested at the death of the testator, Morris, and does not violate the rule against perpetuities; and, for the same reasons, we declare valid the gift to Robert Frick, Jr.

We continue now to the gift to Cherie Kelsey upon the termination of the preceding life interest which we have determined to have become vested in Charles Newcomb Kelsey.

If the gift to Cherie Kelsey constitutes a future estate which takes effect immediately upon her reaching the age of twenty-one, and upon the expiration of the preceding estates as specifically limited, then it is a vested interest in her, in that it constitutes a future interest or estate that is subject to no condition precedent except the termination of the preceding estates.

Our analysis of the language employed in the will brings us to the conclusion that the life interest given to her vested at the death of the testator, even though she may never possess or enjoy the estate.

It is our further conclusion that the gift to Louise and Susan Frick vested likewise.

For various reasons, which became obvious upon further inspection of the textbooks and reported decisions, the gifts to the "lineal descendants of Charles Newcomb Kelsey living at the time of each distribution of income, if any there be; otherwise * * * to my lineal descendants," are void. Likewise, the gifts to the "lineal descendants of Robert Frick, Jr., living at the time of each distribution of income, if any there be; otherwise * * * to my lineal descendants," are void.

4. Heretofore in this opinion we have declared certain appointments invalid and some valid. In respect to those declared valid, we find that (1) they were consistent with the powers given in the Schultze trust; (2) the so-called rule of "restraints on alienation" is not applicable to these gifts; and (3) the rule of "infectious invalidity," whatever its legal merits may be in other situations, is not applicable here.

In concluding this opinion, we direct the final disposition of the property.

As set forth above, the Schultze trust provides:

"* * * In the event of his (Gouverneur Morris') death without exercising such power of testamentary appointment, his said share, or the balance thereof then remaining, shall be added to and become a part of the share of the trust estate held for the benefit of my niece, Henrietta Morris Bonsal, to be held and disposed of as is herein provided for her said share."

From an inspection of the entire Morris will, it is evident that the testator did not blend or commingle his own property with that over which he had the power of appointment. The attempted appointment was confined only to the property of the Schultze trust. Under these circumstances, "the balance thereof remaining" after payment of the valid vested interests and gifts, must be given as directed by the above provision in the Schultze trust. See: Northern Trust Co. v. Porter, 368 Ill. 256, 13 N. E. 2d 487, and cases therein cited.

A decree may be prepared in accordance with this opinion.

HUNSICKER, PJ, STEVENS, J, concur.