DOLLAR SAVINGS & TRUST CO., TRUSTEE, *v.* FIRST NATIONAL BANK OF BOSTON ET AL.

[Cite as Dollar Savings & Trust Co. v. First National Bank (1972), 32 Ohio Misc. 81.]

(No. 11379-C—Decided July 28, 1972.)

Common Pleas Court of Mahoning County.

*Messrs. Manchester, Bennett, Powers & Ullman*, for plaintiff.

*Messrs. Jones, Day, Cockley & Reavis, Messrs. Roth & Stephens* and *Messrs. Mitchell, Mitchell & Reed*, for defendants.

HENDERSON, J. This is an action seeking a declaratory judgment and instructions brought by The Dollar Savings & Trust Company of Youngstown, testamentary trustee under the will of Grace Tod Arrel, deceased.

Grace Tod Arrel died testate on November 27, 1921, domiciled in Mahoning County, Ohio. Under paragraph third of Item XVI of her will she left one-fourth of her residuary estate to the plaintiff in trust for the benefit of her daughter, Frances Arrel Parson during her lifetime, and thereafter as follows:

"and after the decease of my said daughter, the principal of said Trust Fund shall be distributed among her legal heirs in such manner as it would be distributable, had she at her death, been the absolute owner thereof, in her own right. It is hereby provided however, that my said daughter shall have power to direct by her Will, the manner in which said Trust Fund shall be distributed and the persons to whom the same shall go."

Frances Arrel Parson died testate December 2, 1969, domiciled in Hancock County, Maine. At the time of her death there was about $500,000, all personalty, in the Arrel trust fund and about $164,000 in her own probate estate. Her will, which was executed September 7, 1967, contains no specific reference to the Arrel power of appointment, but Article Fifth thereof provides as follows:

"*Article Fifth*: All the rest and residue of my property and estate of every kind and nature of which I shall die seized or possessed or to which I shall in any way be entitled or to which my estate may subsequently become entitled or over which I may have any power of appointment at the time of my death, I devise and bequeath to the then Trustee or Trustees under a certain Indenture of Trust heretofore executed by me on the 7th day of September 1967, as the same may be from time to time amended, between myself, as Settlor, and the Old Colony Trust Company, of Boston, County of Suffolk, Commonwealth of Massachusetts and George Arrel Parson of said Boston, as Trustees, which is known as the "Frances A. Parson Trust" to be added to the principal of the trust estate created under said Indenture and to be held, administered and distributed in all respects as an integral part thereof."

The indenture of trust of September 7, 1967, mentioned in her will, is a living trust executed on that date by Frances Arrel Parson and the corporate predecessor of the defendant The First National Bank of Boston, and the defendant George Arrel Parson as trustees. It was a revocable trust but it was not revoked by Mrs. Parson during her lifetime. The trust agreement contains provisions for the inalienability of principal and income by the

beneficiaries and freedom from the claims of creditors. It also recites that the trust was created and is governed by, and is to be construed and administered according to the laws of Massachusetts. The assets in the trust, at the time of death of Mrs. Parson, amounted to about $3,100,000 in addition to her probate assets. The trustees of Mrs. Parson's trust are also the executors of her estate.

The trust indenture provides that after the settlor's death, certain payments are to be made to persons not the issue of the settlor, and that the remainder of the trust property is to be held for the benefit of the settlor's children for their lives. Each child is given a testamentary power of appointment "to or among" his own issue. In default of such appointment by any child, his share is to be retained in trust for the benefit of his issue, or the issue of the settlor, by representation, until each of such issue reaches the age of 21 years, at which time he is to receive his share of the principal, but in no event later than 21 years after the death of the last to die of the settlor and all her issue living at the date of the execution of the trust indenture.

Mrs. Parson is survived by three children, George A. Parson, Donald Parson, Jr., and Frances P. Hunt, all of whom were living at the death of Grace Tod Arrel, and eight grandchildren and seven great grandchildren, all of whom were born after the death of Mrs. Arrel. The children maintain that they are entitled to the Arrel trust assets outright because Mrs. Parson, their mother, did not intend to exercise the Arrel power of appointment in favor of her living trust, and could not have done so legally even if she had so intended.

It is axiomatic that it is the duty of this court to determine, as nearly as possible, the intent of the decedent, and to see such intent is fulfilled if the law permits. This seems especially true in this case in which there are contingent beneficiaries, and the living trust created by the donee of the power of appointment, Frances A. Parson, is a spendthrift trust.

The question first presented is the nature of the power

of appointment which Grace Tod Arrel gave to her daughter. The Parson children maintain that the power is a special power, that the objects of its exercise are limited to the "legal heirs" of her daughter, and that therefore, she was unable to appoint the Arrel trust assets to her living trust because the beneficiaries of the latter include many persons who were not her legal heirs at her death. They reason that by application of the doctrine of *ejusdem generis*, the sentence "(It) is hereby provided however, that my said daughter shall have power to direct by her will, the manner in which said trust fund shall be distributed and the persons to whom the same shall go" is limited by the preceding clause, "after the decease of my said daughter, the principal of said trust fund shall be distributed among her legal heirs in such manner as it would be distributable, had she at her death, been the absolute owner thereof, in her own right."

It appears to the court to be unnecessary for the purposes of this proceeding to determine whether the power of appointment is a special one or a general one. For although the non-applicability of the doctrine of *ejusdem generis* to the facts of this case seems arguable, nevertheless Mrs .Parson acted within the scope of her power, in the court's opinion, even though the power be deemed a special one with the objects of its exercise limited to Mrs. Parson's heirs. For the fact is that if Mrs. Parson exercised the power at all, she exercised it primarily for the benefit of her children who were her only "legal heirs." It would seem that the power to direct "the manner in which said Trust Fund shall be distributed and the persons to whom the same shall go" is broad enough to permit Mrs. Parson to appoint to her "legal heirs" by way of an *inter vivos* trust, whose provisions limit the interests of her children to life estates, with testamentary powers of appointment in them for the benefit of their issue, and remainders over to their issue in default of exercise. Furthermore, such manner of distribution by Mrs. Parson, in limiting the interests of her children to life estates, is similar to that utilized by Mrs. Arrel herself. Mrs. Arrel's will recites that she did

so "thru no lack of confidence either in Fanny (Mrs. Parson), or in her husband, but because I believe it wise to follow the precedent which is found in the will of my father in making similar provision in respect to a portion of his estate left by him to my sister and myself, by thus placing a portion of Fanny's share beyond the ordinary hazards of business." To conclude that Mrs. Arrel intended to limit her daughter's power to one authorizing her to appoint only absolute interests to her heirs in the technical sense, would confine her authority to a right of selection or rejection among her own children, which would appear to be not only strained and unnatural but also at variance with both the language of the power itself and the Arrel tradition.

But the Parson children maintain further that their mother's power of appointment is certainly not broad enough to permit her to appoint the assets of her trust fund to a living trust which authorizes the payment of their mother's debts and death taxes and benefits strangers. This raises the question of the effect of the "pour-over" into the donee's *inter vivos* trust. Article Fifth of Mrs. Parson's will, by which the power was exercised, if at all, purports to blend all her property and transmit it to the trustees "to be added to the principal of the trust estate created under said Indenture and to be held, administered and distributed in all respects as an integral part thereof." Paragraph 15 of Article Eleventh of Mrs. Parson's trust indenture empowers the trustees to receive additional property from the settlor "by will or otherwise, to be added to the trusts herein created and to be held, administered and accounted for as a part thereof." It appears to the court that because of this blending, the appointive assets can be utilized in the trust completely and exclusively for the benefit of the Parson children and their issue by the application of the principle of selective allocation or marshalling. Simes and Smith, The Law of Future Interests 2nd Ed., Section 975, p. 437; 3 Restatement of the Law, Property, Future Interests (1940), Section 363, p. 2004, Section 364, p. 2015; 46 Cornell Law Quarterly 416; *Stone* v. *Forbes*

(1905), 189 Mass. 163, 75 N. E. 141. The foregoing authorities involve not living trusts but wills only which recite the intent to dispose of both owned and appointive property in fulfilling bequests, some of which prove to be invalid as to the appointive property though valid as to the owned property. Under these circumstances, courts have, as a rule of construction, or implied appointment, allocated the owned assets to the fulfillment of objects not authorized by the power, and the appointive assets to the valid objects of the power. There would seem to be no reason why this same principle should not be extended to the instant case, in which the donee blended her owned assets with her appointive assets, and poured them both into her *inter vivos* trust to be administered thereunder, along with her previously transferred assets, as one fund. The trustees of Mrs. Parson's *inter vivos* trust, then, would allocate sufficient of Mrs. Parson's own assets for the payment of her expenses of administration, taxes, debts and to the fulfillment of bequests to persons not her issue; and they would allocate the appointive assets to the trusts for Mrs. Parson's children and their issue. Hence Mrs. Parson could have exercised the Arrel power in favor of her trust even though the power be considered limited or special.

The next question, then, is whether Mrs. Parson did exercise the Arrel power of appointment. Article Fifth of the Parson will is basically a general residuary clause. It has been the law in Ohio that a general bequest or residuary clause in and of itself does not exercise a testamentary power of appointment. *Kiplinger* v. *Armstrong* (C. A., Summit, 1930), 34 Ohio App. 348, 8 Ohio Laws Abs. 286; *Bishop* v. *Remple* (1860), 11 Ohio St. 277; *Arthur* v. *Odd Fellows* (1876), 29 Ohio St. 557. But since the submission of this case, the Court of Appeals of this county has furnished this court with an opinion, as yet unpublished, in the case of *The Dollar Savings & Trust Company* v. *Kirkham*, Case No. 4993, in which the appellate court has reversed the judgment of this court as reported in 21 Ohio Misc. 163 (1969). In so doing, the court held that the testamentary power of appointment in that case was an estate, right or

interest in property within the meaning of R. C. 2107.50, and that such power, therefore, was exercised, under the statute, by the general residuary clause of the donee's will, there being no different intention manifested. R. C. 2107.50 provides as follows:

"Property acquired subsequent to will. Any estate, right, or interest in any property of which a decedent was possessed at his decease shall pass under his will unless such will manifests a different intention."

The decision of the Court of Appeals in the *Kirkham* case, if applicable to this case, as it appears to be, would mean that Frances A. Parson exercised her power of appointment by the residuary clause of her will alone, there being no evidence of any different intention manifested by her will. However, it is believed that the same conclusion must be reached irrespective of the effect of the *Kirkham* decision. For Article Fifth, of the Parson will, is more than a mere residuary clause. It contains, also, a bequest of all "my property" "over which I may have any power of appointment at the time of my death." The Parson children maintain that this could not have been intended to exercise the power because a power of appointment is not the property of the donee of the power, and the Parson will expressly limits the powers of appointment mentioned to those over the donee's own property. See *Tax Commission* v. *Oswald* (1923), 109 Ohio St. 36, at p. 51; *Cleveland Trust Co.* v. *McQuade* (C. A., Cuyahoga, 1957), 106 Ohio App. 237, at p. 250; *Moore* v. *Emery* (1941), 137 Me. 259, 18 A. 2d 781. The case cited by counsel which appears to be most nearly in point is that of *Matteson* v. *Goddard* (1891), 17 R. I. 299, 21 A. 914. In that case the will language was as follows:

"All the rest and residue of my property, real, personal and mixed, wherever situated and of whatever kind, of which I may be possessed at the time of my death, or over which I at the time of my death may have the power of testamentary disposition, I give, devise, and bequeath to my wife, Elizabeth Cass Goddard."

However, in that case, the power of appointment involved was one created by the donor in an *inter vivos* trust

instrument executed six years after the making of his will. The Rhode Island Supreme Court bases its decision upon this circumstance, distinguishes several English cases upholding the exercise by similar language of powers previously created, and adds the following significant language: "We think it doubtful if it would have occurred to any person to read the clause in any other way (*i e.* that it was intended to exercise the power) if the trust-deed had not been subsequently executed;" p. 915. The Rhode Island court also observes that one ground for the English decisions was "that the language having reference to power was strange and purposeless if the testator intended to dispose of his own property, whereas it was what might be expected, if he likewise intended to dispose of the property over which he had simply an appointing power." p. 914. See *Bailey* v. *Lloyd* (1829), 38 Eng. Rep. 1051, 5 Russ. 330.

Technically, with respect to Mrs. Parson's will, the appointive assets were to a degree her property in that she had a life estate in them, thus justifying her use of the possessive pronoun "my." Furthermore, although the grammar of Article Fifth is not strictly correct insofar as the antecedent of the power of appointment is concerned, it is equally incorrect or inappropriate as to other clauses of the article, to-wit: "my property"—"to which I shall in any way be entitled or to which my estate may subsequently become entitled." Consequently, the use of "my property" would not seem to impart any special limitation to the language exercising powers.

While some writers advise against the use of "blind" or "blanket" testamentary exercises of powers of appointment, the following somewhat similar language is said to have been in common usage for many years: "all the rest and residue of my property of whatever kind and wherever situated, including any property over which I may have any power of appointment, I devise, bequeath and appoint as follows." 64 Harvard Law Rev. 185, at p. 202; 51 Cornell Law Quarterly 1; Prentice-Hall, Inc., "Wills—Trusts—Estate Planning Forms Par. 59, 201; Simes and Smith, The Law of Future Interests, 2d Ed. Section 988, p. 484.

Generally, the answer to the question whether a pro-

vision in a will is in execution of a power depends upon the intention of the donee of the power. Earlier cases hold that to sustain the exercise of a power, the language of the will must not be fairly susceptible to any other interpretation, and the intent must be so clear that no other reasonable intent can be imputed to the will. *Arthur* v. *Odd Fellows* (1876), 29 Ohio St. 557, at p. 561; *Kiplinger* v. *Armstrong* (C. A., Summit, 1930), 34 Ohio App. 348, 8 Ohio Law Abs. 286. According to the latter case, the modern tendency seems to be to relax the rule to hold that if it can be fairly determined from all the competent evidence available that it was the intention of the testator to execute the power, such intention will be given effect, p. 352. Under either the earlier, strict rule, or under the more modern, relaxed rule, the court concludes that Mrs. Parson. by the language of Article Fifth of her will must be deemed to have exercised the testamentary power given her by the will of Grace Tod Arrel. Her intent, as evidenced by the blanket appointment included in the residuary article, was to blend together her appointive property and her own property, and to distribute the whole to her existing, living trust.

But the Parson children further maintain that "Frances A. Parson, a Maine decedent, could not appoint the corpus of her mother's Ohio testamentary trust to Massachusetts trustees not qualified to administer trusts in the state of Ohio and not subject to the jurisdiction of the Probate Courts of either Ohio or Maine." To support this position several New York cases and a text-book authority are cited. *Matter of Von Gontard* (1962), 36 Misc. 2d 529, 233 N. Y. S. 2d 30; *Application of Chase National Bank* (1950), 102 N. Y. S. 2d 124; *In Re Culver's Estate* (1952), 116 N. Y. S. 2d 75; V Scott on Trusts (3rd Ed., 1967), Section 639, p. 4050. All three of the New York cases involve appointments to testamentary trustees as compared with the appointment to the *inter vivos* trustee in the case at bar. An examination of the cases reveals that the holdings of the courts are based upon their requiring the appointed trust assets to be kept under the jurisdiction and control of the New York courts, the courts of the

domicil of the creator of the powers.  In V Scott on Trusts (3rd Ed., 1967), Section 639, p. 4053, the author questions the New York decisions, particularily as applicable to general powers of appointment, and points out that in other states, the appointed trustee need not qualify in the court of the donor's domicil, citing *Morgan Guaranty Trust Co.* v. *Huntington* (1962), 149 Conn. 331, 179 A. 2d 604; *Wilmington Trust Co.* v. *Sloane* (1947), 30 Del. Ch. 103, 54 A. 2d 544; *Matter of Vanderbilt* (1961), 31 Misc. 2d 1086, 221 N. Y. S. 2d 93.  From the latter case it will be noted that even in New York where there is a provision in the donee's will, similar to that contained in the Parson indenture, that the validity, construction, effect, and administration of the donee's testamentary trust should be determined by the law of the donee's domicil, the courts will permit the appointive assets to be transferred to a foreign trustee.  The text observes, furthermore, that even in the case of a special power of appointment, in which the application of the New York doctrine is more arguable, it might be held that the trustee named by the donee's will should not be required to qualify in the court of the donor's domicil, and that the trust should be subject to the supervision of the courts of the donee's domicil in which the trust is to be administered.  This, the text concludes, "would be more convenient and should not be precluded by any rules of logic to the contrary." *Ibid*, Section 639, p. 4055.

In another portion of the text, V Scott on Trusts (3rd Ed., 1967), Section 563, p. 3800, the author states the following:

"A testator may by his will bequeath property to the trustee of an existing inter vivos trust, to be held by him upon the terms of that trust.  Whether this is permissible as a testamentary disposition of movables is determined by the law of the state of the testator's domicil, as we shall see.  If the disposition is valid, the result is to augment the inter vivos trust, and the trust thus augmented is administered in accordance with the law governing the inter vivos trust.  It is provided by the Uniform Testamentary Additions to Trusts Act and by similar statutes that "Unless

the testator's will provides otherwise, the property so devised or bequeathed shall not be deemed to be held under a testamentary trust of the testator but shall become a part of the trust to which it is given.'' It is unnecessary, therefore, for the trustee to qualify in a court of the testator's domicil. In *In re York Estate* (1949), 95 N. H. 435, 65 A. 2d 282, 8 A. L. R. 2d 611, a testator who died domiciled in New Hampshire bequeathed the residue of his estate to a Massachusetts bank and a New Hampshire resident as trustees under an inter vivos trust previously created by him. In an action brought in New Hampshire, it was held that the residue became an accretion to the property of the inter vivos trust, that the executors should pay over the residue to the trustees of the inter vivos trust, and that they need not qualify as trustees in the New Hampshire court. It is thus a simple matter to avoid any requirement that an individual trustee or trust company qualify in a court of the testator's domicil. All that the testator need do is to create an inter vivos trust and by his will leave property to be added to the trust.''

Both Maine and Massachusetts have enacted the Uniform Testamentary Addition to Trusts Act. Maine Revised Statutes, Title 18, Section 7; Annotated Laws of Massachusetts, Chapter 203, Section 3B. Ohio's version, R. C. 2107.63, is in part as follows:

''A testator may by will devise, bequeath, or appoint real or personal property, or any interest in such property, to a trustee of a trust which is evidenced by a written instrument executed by the testator or any other person either before or on the same date of the execution of such will and which is identified in such will.

''The property or interest so devised, bequeathed, or appointed to such trustee shall be added to and become a part of the trust estate, shall be subject to the jurisdiction of the court having jurisdiction of such trust, and shall be administered in accordance with the terms and provisions of the instrument creating such trust.''

In Ohio the jurisdiction of the probate court over trustees is limited to testamentary trustees, and it has no con-

trol over trustees of *inter vivos* trusts. R. C. 2101.24 (D), 2109.01; *Purcell* v. *The Cleveland Trust Co.* (C. A., Cuyahoga, 1965), 6 Ohio App. 2d 235. This would not preclude, however, this court from following the Arrel assets into the Parson living trust in furtherance of its jurisdiction over the Arrel testamentary trust in this proceeding in order fully to dispose of the issues herein properly before it. R. C. 2101.24. Although the Court of Common Pleas of this state, other than the probate division, has jurisdiction to entertain civil actions seeking declaratory judgments or equitable relief and accountings relating to *inter vivos* trusts, the *inter vivos* trustee of Ohio is not appointed by any court, nor subject to the administrative supervision or statutory accounting procedure of any court. R. C. 2721.05; 1 Ohio Jurisprudence 2d Accounts and Accounting, Section 49, p. 206; 13 Clev.-Mar. L. Rev. 544, at p. 557; 36 U. Cinn. L. Rev. 650, at p. 663. The statutory accounting procedures for New York trustees appear to be more inclusive and demanding than those of Ohio. See N. Y. Civil Practice Law and Rules, Article 77, Section 7702, 7705; N. Y. Estates, Powers and Trusts Law, Section 7-2. 7. In any event there would appear to be no reason or basis for this or any other Ohio court to assert its jurisdiction over a non-resident *inter vivos* trustee to any greater extent than it would to its own resident *inter vivos* trustees. This conclusion seems especially appropriate in this case, in which the non-resident donee was given a power to direct the "manner in which the said trust fund" should be distributed, and the donee, in exercising it, stipulated that the living trust, into which she poured the appointive assets, should be governed, construed and administered according to the laws of Massachusetts. Consequently, it is the holding of the court that there is no law or policy in Ohio to prevent the donee, Frances A. Parson from appointing the Arrel trust assets to her Massachusetts trustee who need not qualify in Ohio.

It is maintained, finally, that the appointment of the corpus of the Arrel trust into the donee's living trust violates the Ohio rule against perpetuities.

On the perpetuities question, the law of Ohio, the donor's domicil, rather than the law of Maine, the donee's domicil is held to be applicable. V Scott on Trusts (3rd Ed., 1967), Section 635, p. 4038. In Ohio, the common law rule, in modified form, has been codified by R. C. 2131.08, providing, in pertinent part, as follows:

"(A) No interest in real or personal property shall be good unless it must vest, if at all, not later than twenty-one years after a life or lives in being at the creation of the interest. * * * It is the intention by the adoption of this section to make effective in Ohio what is generally known as the common law rule against perpetuities, except as set forth in paragraphs (B) and (C) of this section.

"(B) For the purposes of this section, the time of the creation of an interest in real or personal property subject to a power reserved by the grantor to revoke or terminate such interest shall be the time at which such reserved power expires, either by reason of the death of the grantor or by release of the power or otherwise.

"(C) Any interest in real or personal property which would violate the rule against perpetuities, under paragraph (A) hereof, shall be reformed, within the limits of the rule, to approximate most closely the intention of the creator of the interest. In determining whether an interest would violate the rule and in reforming an interest the period of perpetuities shall be measured by actual rather than possible events.

"(D) Paragraphs (B) and (C) of this section shall be effective with respect to interests in real or personal property created by wills of decedents dying after December 31, 1967, and with respect to interests in real or personal property created by inter vivos instruments executed after December 31, 1967, and with respect to interests in real or personal property created by inter vivos instruments executed on or before December 31, 1967, which by reason of paragraph (B) of this section will be treated as interests created after December 31, 1967. An interest in real or personal property which comes into effect through the exercise of a power of appointment shall be regarded as having

been created by the instrument exercising the power rather than the instrument which created the power.''

Paragraph (A) of the statute was originally effective January 1, 1932, and the balance of the statute, paragraphs (B), (C) and (D) were enacted in 1967, effective October 24 of that year. Prior to 1932, Ohio perpetuities legislation was limited to real estate (former G. C. 8622), but the common law rule seems always to have been applicable as to personal property. 42 Ohio Jurisprudence 2d Perpetuities, Section 11, p. 467; *Cleveland Trust Co.* v. *McQuade* (C. A., Cuyahoga, 1957), 106 Ohio App. 237.

The Parson children maintain that the statute can have no application in this case because the power of appointment was created in 1922, long before even the original enactment. It seems to the court, however, that the application of the present statute to this case is clear and inescapable. Paragraph (A) of the statute is a codification of the common law, and thus makes no change with respect to personalty with which this case is exclusively concerned. The 1967 amendment is specifically made effective upon interests created by wills of decedents dying after December 31, 1967, which Mrs. Parson did, and an interest derived from a power of appointment is specifically declared to have been created by the instrument exercising the power, which Mrs. Parson's will did.

There would seem to be no constitutional prohibition against applying the 1967 statute to the power of appointment even though the power was actually created in 1921. A statute is not regarded as operating retroactively because of the mere fact that it relates to antecedent events, or draws upon antecedent facts for its operation. 50 American Jurisprudence, Statutes, Section 476, p. 493. And while it is generally considered to be against the policy of the law to give statutes a retroactive effect, it is the taking away or impairment of vested rights that is the object of such policy. 50 American Jurisprudence, Statutes, Section 476, p. 492; 50 Ohio Jurisprudence 2d, Statutes, Section 338, p. 316. By the very nature of the perpetuities problem, rights or interests stemming from a power of ap-

pointment do not vest until the power is exercised. And it has been held that while the law of the donor's domicil governs as to whether a power of appointment has been exercised, it is the law as it was at the time of the exercise of the power and not as it was at the time of the creation of the power. V Scott on Trusts (3rd Ed., 1967), Section 642, p. 4063; *Rhode Island Hospital Trust Co.* v. *Dunnell* (1912), 34 R. I. 394, 83 Atl. 858; *In re Wilde's Estate* (1961), 222 N. Y. S. 2d 308; *In re Von Gontard's Trust*, 36 Misc. 2d 529, 233 N. Y. S. 2d 30.

Prior to the 1967 reform legislation it had been established in Ohio that the period for testing the validity of an exercise of a general testamentary power of appointment, under the common law rule against perpetuities, was measured from the time of the creation of the power and not from its exercise. *Cleveland Trust Co.* v. *McQuade* (C. A., Cuyahoga, 1957), 106 Ohio App. 237. The last sentence of paragraph (D) of the statute, read independently, would appear to mean that the perpetuities period is to be computed from the time a power of appointment is exercised. However, such was not the intent of the committee sponsoring the 1967 amendment, and the inclusion of the sentence as a part of paragraph (D), which specifies the effective date of the amended act, rather than as a separate paragraph, would tend to indicate that its application was meant to be limited to clarifying the effective date of the amendment with respect to a power of appointment. 29 Ohio St. L. J. 1 at p. 6; VI O. S. Bar Association Service Letter (Dec. 1967); compare 20 Case Wes. Res. L. Rev. p. 295. This seems emphasized by the circumstance that paragraph (A) of the statute as re-enacted in 1967, confirms the common law in Ohio with the express exception of paragraphs (B) and (C), but not (D), of the section. Furthermore, paragraph (B), whose sole purpose is to establish the starting time for the perpetuities period with respect to revocable *inter vivos* trusts, refers to the "time" of expiration of powers of revocation and termination. The absence of the word "time" in the last sentence of paragraph (D) fortifies the conclusion that the purpose of the

sentence was not to establish a general starting time for all powers of appointment. Consequently, it is the holding of this court that the last sentence of paragraph (D) of R. C. 2131.08 applies only to the effective date of the 1967 amendment, and does not change the Ohio common law rule enunciated in *Cleveland Trust Co.* v. *McQuade, supra,* that the perpetuities period of an interest derived from the exercise of a general testamentary power of appointment is measured from the time of the creation of the power and not from its exercise. As pointed out by the court in the *McQuade* case, a general power to appoint by will for perpetuities cases is treated as a special power.

In the instant case, as stated above, Grace Tod Arrel left the trust to her daughter Frances A. Parson for life, with a power to appoint by will. Mrs. Parson appointed the trust into her own *inter vivos* trust which provided for life estates for her children, as a class, each child to have a power to appoint the remainder of his share by will to or among his issue, with remainders to issue of the children in default of appointment. Under the common law and, in the opinion of the court, under the statute, the period of the perpetuities would run from the death of Mrs. Arrel. Under the common law, the life in being, or the measuring life, would have to have been that of Mrs. Parson, because at the time of Mrs. Arrel's death it could not be said that her daughter would not have more children. Bogert. Trusts and Trustees (2d Ed. 1965), Section 213, p. 486. But even under the pre-1967 Ohio rule the life estates in Mrs. Parson's three children vested at the death of their mother, and hence do not violate the rule. *Cleveland Trust Co.* v. *McQuade, supra.* The powers of appointment of the remainders given to the children, and the remainders over in default of exercise may not result in vesting within twenty-one years after Mrs. Parson's death, and hence would violate the rule under the common law. These interests, however, under paragraph (C) of R. C. 2131.08, would not fail, but would, if necessary, be reformed within the limits of the perpetuities rule, presumably by the Massachusetts courts. In determining whether reformation were neces-

sary under this paragraph, which constitutes the *"cy pres"* and "wait and see" provisions of the Ohio statute, the court of jurisdiction would measure the period of perpetuities by events actually transpired, rather than by events as they might possibly have been from the viewpoint of the original donor at the time of her death. Thus the lives in being, or measuring lives, would be the children themselves, since all of them were actually in being at Mrs. Arrel's death and their powers of appointment would have to be exercised so that the interests subject to their powers would vest within twenty-one years thereafter. In case of the failure of exercise of any power, the remainders over, to the extent that they would actually violate the rule, would be reformed. Mrs. Parson's trust indenture contains a saving clause requiring the vesting of the remainders not later than twenty-one years after the last to die of her issue living at the date of the execution of the indenture, but this, of course, would be reformed, if necessary, with respect to the Arrel assets, to designate the date of death of the last to die of Mrs. Parson's own children as the measuring event.

In conclusion, this court holds that the power of appointment contained in paragraph Third of Item XVI of the will of Grace Tod Arrel is broad enough to permit the donee Frances A. Parson to give her children life estates with powers of appointment for the benefit of, and with remainders over in default of exercise to their issue; that Mrs. Parson did exercise that power by blending her appointive assets with her own into her *inter vivos* trust; that there is no applicable law or policy to prohibit her so doing; that any violations of the rule against perpetuities resulting therefrom will be reformed; and that, consequently, Mrs. Arrel's testamentary trustee must transmit the balance of the trust assets to Mrs. Parson's trustees.

*Provisions of trust upheld.*